UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                          :
LOREN A. RAGLAND,                         :
                                          :   CASE NO. 1:08-CV-2688
         Plaintiff,                       :
                                          :
    v.                                    :   OPINION & ORDER
                                          :   [Resolving Doc. Nos. 2, 13, 14, 15, 16 & 17.]
COMMISSIONER OF                           :
SOCIAL SECURITY,                          :
                                          :
         Defendant.                       :
                                          :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Magistrate Judge David S. Perelman recommended that this Court affirm the Social Security Commissioner's denial of disability benefits to Plaintiff Loren A. Ragland after July 23, 2005. [Doc. 16.] Ragland now objects to that recommendation. He seeks disability benefits after that date or, in the alternative, a remand for further administrative proceedings. [Doc. 17.] For reasons different than the magistrate judge, the Court **AFFIRMS** the Commissioner's denial of benefits to Ragland.

Plaintiff Ragland brought this action after an Administrative Law Judge partially denied his claim for disability insurance benefits and supplemental security income. [Doc. 2.] In brief, the ALJ found that Ragland's non-Hodgkin lymphoma rendered him disabled—and thus entitled to benefits—from August 19, 2002 through July 22, 2005. [Doc. 16 at 4.]

But the ALJ found—and Ragland does not dispute—that Ragland's lymphoma was in remission after July 23, 2005. [Doc. 16 at 4.] The ALJ then applied the Social Security Administration's eight-step process to determine whether Ragland's disability ended on that date.

-1-

Case No. 1:08-CV-2688
Gwin, J.

[Doc. 16 at 4.] *See* 20 C.F.R. § 404.1594(f). At step seven, 20 C.F.R. § 404.1594(f)(7), the ALJ found that Ragland had the residual functional capacity to do a range of light work, although he was limited to simple, routine, low-stress tasks that involved no complex reading. [Doc. 16 at 4.] At step eight, 20 C.F.R. 404.1594(f)(8), the ALJ found that Ragland's age, education ("at least . . . high school"), work experience, and residual functional capacity allowed him to perform a significant number of jobs in the regional economy—including as a bench assembler, an electronics worker, and a wireworker. [Doc. 16 at 4.] The ALJ thus found that Ragland was not disabled after July 23, 2005 and denied him benefits after that date. [Doc. 16 at 4.] Ragland now challenges that denial.

Ragland's appeal from the ALJ's decision requires this Court to determine whether "substantial evidence" supports the ALJ's findings. *See* 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (explaining that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

Ragland argues that no substantial evidence supports the ALJ's step-seven residual functional capacity determination or the ALJ's step-eight finding that Ragland could perform a significant number of jobs in the regional economy. [Doc. 13 at 7-20.] Ragland claims that the ALJ erred in four independent ways.

*First*, Ragland contends that the ALJ's determination that Ragland's residual functional capacity limited him to "low-stress tasks" violated Social Security Ruling 85-15, which explains that stress inheres in individuals, not jobs. [Doc. 13 at 7-8.] Ragland urges that properly applying SSR 85-15 would yield a more limited residual functional capacity because "the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs." S.S.R. 85-15 (1985). In response, the Commissioner argues that Ragland has not identified any stressors that he could not

-2-

Case No. 1:08-CV-2688
Gwin, J.

tolerate. [Doc. 14 at 6.]

Ragland's argument fails because the ALJ's error was harmless. The ALJ found that although Ragland had "an adjustment disorder," he could "relate to others" and "complete simple routine tasks." [Doc. 12 at 23.] The basis for the ALJ's finding was examining psychologist Dr. Thomas F. Zeck's conclusion that, once Ragland completed his chemotherapy treatment, he would be able to adequately tolerate the stresses of daily work activities—an individual-based, rather than job-based, view of stress.[1] Ragland does not contend that substantial evidence does not support the ALJ's finding that he could "complete simple routine tasks."

*Second*, Ragland contends that substantial evidence does not support the ALJ's finding that the vocational expert's testimony about jobs that Ragland could perform was consistent with the *Dictionary of Occupational Titles* ("*DOT*"). [Doc. 13 at 8-14.] The vocational expert testified that three jobs—bench assembler, electronics worker, and wireworker—were consistent with a high-school education, a restriction on complex reading, and a limitation on exposure to respiratory irritants.

Ragland argues that the vocational expert's statement that those three jobs "don't require reading" conflicted with their language development requirements listed in the *DOT*.[2] [Doc. 13 at 11-12.] This argument fails for two reasons. First, the ALJ's statement that those jobs "don't

---

[1] [Doc. 12 at 23 (citing Doc. 12 at 249 ("[Ragland's] mental ability to withstand the stress and pressures associated with a day to day work activity is likely to be adequate once he works through his chemotherapy regimen. It is concluded that he has the mental ability to perform at least simple repetitive tasks."))].

[2] *See DOT* 706.684-022 (bench assembler requires Language Level 1 ("Recognize meaning of 2,500 (two-or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.")); *DOT* 726.687-010 (electronics worker requires Language Level 2 ("Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.")); *DOT* 728.684-022 (wireworker requires Language Level 2).

-3-

Case No. 1:08-CV-2688
Gwin, J.

require reading" occurred in the context of his discussion of the jobs' Specific Vocational Preparation ("SVP") classifications, not their General Educational Development ("GED") classifications.[3/] SVP refers to what it takes for "a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *DOT*, Appendix C, at II. By contrast, GED—which enumerates each job's language requirements—refers to "education of a general nature which does not have a recognized, fairly specific occupational objective." *DOT*, Appendix C, at III. The vocational expert's testimony is consistent, therefore, with the fact that these jobs demanded an ability to read as a general background skill (*i.e.*, GED) but not as a specific skill needed to get up to speed (SVP).

More importantly, the vocational expert correctly testified that the jobs did not require *complex* reading—the reading limitation that Ragland experienced. Thus, the vocational expert's testimony was fully consistent with the *DOT*, and substantial evidence supports the ALJ's conclusion that Ragland's reading limitations did not prevent him from performing those jobs.

Ragland next challenges the vocational expert's testimony (and the ALJ's corresponding finding) that Ragland could perform those jobs despite his complete limitation on exposure to respiratory irritants. [Doc. 13 at 12-14.] In particular, Ragland argues that, according to the *DOT*, electronics workers are "occasionally" exposed to caustic chemicals. [Doc. 13 at 12 (citing *DOT* 726.687-010).] *See also* S.S.R. 83-10 (1983) (defining "occasionally" as ranging from "very little up to one-third of the time"). However, Ragland concedes that the other two jobs (bench assembler

---

[3/][Doc. 12 at 445 ("Q: Mr. Macy, these three occupations, where do they fall on the educational requirements as far as language ability, math ability, what percentiles would those—" "A: I don't know, but SVPs on these would be ones and twos." "Q: Those would all be two, wouldn't they?" "A: No, many would be one. These jobs don't require reading and they're, they're taught by simple demonstration.").]

Case No. 1:08-CV-2688
Gwin, J.

and wireworker) entail no exposure to respiratory irritants and that the number of those jobs in the regional economy was significant. [Doc. 13 at 13 (citing *Hall v. Bowen*, 837 F.2d 272, 275-76 (6th Cir. 1988) (1,350 jobs in regional economy is significant number)).] Thus, by Ragland's own concession, substantial evidence supports the ALJ's finding.

Ragland's other argument about his respiratory irritant limitation is that because SSR 85-15 states that "very few job environments" are open to individuals with a complete limitation, the ALJ should have found him disabled even without vocational expert testimony. This argument misreads SSR 85-15. That ruling speaks to the variety of *occupations* open to individuals with a complete limitation—not the number of actual *positions* within each occupation in the regional economy. *See* S.S.R. 85-15 ("Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.").

Thus, substantial evidence supports the ALJ's conclusion that the vocational expert's testimony was "consistent with the information contained" in the *DOT*. Moreover, because of this consistency, the ALJ's failure to explicitly ask the vocational expert whether his testimony was consistent with the *DOT*, as required by Social Security Ruling 00-4p, was (at most) harmless error. [Doc. 13 at 9-10.]

*Third*, Ragland argues that substantial evidence does not support the ALJ's finding that Ragland had "at least a high school education." [Doc. 13 at 14-19; Doc. 16 at 3.] *See* 20 C.F.R. § 404.1564(b)(4); ("High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above."); 20 C.F.R. § 416.964(b)(4) (same). Although Ragland concedes that he completed the twelfth grade, he contends

Case No. 1:08-CV-2688
Gwin, J.

that contrary evidence—in particular, his objective achievement testing, history of special education classes, and intelligence testing—indicated that his actual education level was lower. [Doc. 13 at 14-19 (citing 20 C.F.R. § 404.1564(b) ("[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower."))].

However, the ALJ considered this contrary evidence, and accordingly he determined that Ragland was limited to simple, unskilled work requiring no complex reading. None of the contrary evidence that Ragland cites shows that his limitations were more extensive. First, the objective achievement testing purportedly showed that Ragland read at the fifth-grade level—a conclusion consistent with a limitation on complex reading. Second, the fact that Ragland took special education classes, by itself, does not suggest that Ragland was unable to do simple, unskilled work with no complex reading—especially in light of the fact that he completed the twelfth grade. Similarly, Ragland does not explain how a verbal IQ of 80 and "borderline intellectual functioning" preclude an individual from doing simple, unskilled work with no complex reading.

Ragland does not argue that any of the jobs identified by the vocational expert in response to the ALJ's question required more than simple, unskilled work with no complex reading. As a result, substantial evidence supports the ALJ's determination of Ragland's vocational limitations.

Similarly, Ragland's argument about his supposedly limited writing ability fails. The ALJ, observing Ragland's completion of high school and his admission that "he was able to write more than his name in English," found that Ragland's writing ability was not so severely limited. Those bases for the finding implicit in the ALJ's hypothetical questions to the vocational expert were substantial evidence—*i.e.*, "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion," even though some evidence may also support the contrary conclusion.

Case No. 1:08-CV-2688
Gwin, J.

*Perales*, 402 U.S. at 401; *see also Crisp v. Sec. of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986) ("[T]he standard on review is to determine if substantial evidence supports the ALJ's conclusion. . . . The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.").

*Fourth* and finally, Ragland argues that substantial evidence does not support the ALJ's finding that Ragland's insured status expired on March 31, 2006. [Doc. 13 at 19-20.] Ragland contends that his insured-status clock should not have run during the three-year period for which the ALJ found him disabled. [Doc. 13 at 19-20 (citing 20 C.F.R. § 404.130(f)).] Ragland argues that if the ALJ correctly applied this disability freeze, the ALJ should have found him insured. [Doc. 13 at 20.]

Even if the ALJ's failure to apply the disability freeze was error, it was harmless. Under section 423(a)(1) of the Social Security Act, an individual is not eligible for disability insurance benefits unless she is insured *and* disabled (as well as other requirements not relevant here). *See* 42 U.S.C. § 423(a)(1)(A), (D), (E) ("Every individual who . . . is insured for disability insurance benefits . . . *and* . . . is under a disability . . . shall be entitled to a disability insurance benefit . . . .") (emphasis added). Because substantial evidence supports the ALJ's finding that Ragland was not disabled after July 23, 2005, Ragland would not have been not eligible for benefits even if the ALJ had applied the disability freeze. [*See also* Doc. 15 at 7 ("Ragland concedes that this error, standing alone, does not require the Court to grant him judicial relief.").]

Hence, as explained above, because substantial evidence supports the ALJ's determination that Ragland was not entitled to disability benefits after July 23, 2005, the Court **AFFIRMS** the

Case No. 1:08-CV-2688
Gwin, J.

Commissioner's denial of benefits.

    IT IS SO ORDERED.


Dated: March 19, 2010          s/ *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE